**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                      No. CR 10-2310 JB

GLORIA E. VIGIL

      Defendant.

**UNSEALED[1] EX PARTE MEMORANDUM OPINION AND AMENDED[2] ORDER**

**THIS MATTER** comes before the Court on Defendant Gloria Vigil's Ex Parte Motion for

17(c) Subpoenas, filed February 10, 2012 (Doc. 119)("Motion"). The primary issue is whether rule

17(c) of the Federal Rules of Criminal Procedure permits Defendant Gloria E. Vigil to seek through

an ex parte proceeding subpoenas duces tecum. The Court will grant the Motion in part and deny

the Motion in part. While the Court believes that rule 17(c) permits ex parte procedures for indigent

defendants, the Court will direct the witness to produce the designated items in Court. Thus, the

Court will not permit production of the requested evidence at the office of Vigil's counsel. The

---

[1]On May 18, 2012, because Defendant Gloria E. Vigil filed her Motion ex parte, and in light of the Court's disposition of this motion, the Court filed its Ex Parte Memorandum Opinion and Amended Order (Doc. 151), ex parte, but ordered that Vigil send to the Court any proposed redactions, within fourteen calendar days of the date of her sentencing. The Court sentenced Vigil on April 26, 2013. Vigil has not provided the Court any proposed redactions. The Court is therefore filing this Memorandum Opinion and Order in unsealed form, with this footnote being the only change to the ex parte original.

[2]On April 18, 2012, the Court issued an Ex Parte Order, see Doc. 143, denying Defendant Gloria Vigil's Ex Parte Motion for 17(c) Subpoenas, filed February 10, 2012 (Doc. 119)("Motion"), on the basis that the Motion was ex parte. The Court stated that it would later issue an opinion detailing the rationale for the Ex Parte Order. See Ex Parte Order at 1 n.2. After the Court has had the opportunity to draft an opinion on this matter, the Court concludes that it is necessary to reach a different conclusion than it originally did in its Ex Parte Order regarding the disposition of the Motion.

Court otherwise believes that the requests for subpoenas are appropriate and will permit the issuance

of the subpoenas.  The Court will order free process to serve the subpoenas because Vigil is

indigent.  Consistent with rule 17(c)(1), the Court may permit the parties and their attorneys to

inspect all or part of the requested evidence when it arrives.

## PROCEDURAL BACKGROUND

Pursuant to a Plea Agreement, filed May 9, 2011 (Doc. 84), Vigil pled guilty to Count 1 of

the Indictment, filed August 10, 2010 (Doc. 33), charging her with a violation of 21 U.S.C. § 846,

that being conspiracy to distribute oxycodone in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

The United States Probation Office ("USPO") disclosed a PSR for Vigil on July 7, 2011.  In the

PSR, the USPO calculates Vigil's total offense level to be 31.  See PSR ¶ 54, at 15.  The USPO

calculates a base offense level of 30 based on the drug equivalency tables contained in U.S.S.G.

§ 2D1.1 and the parties' agreement that "the equivalent of at least 700 kilograms but less than 1,000

kilograms of marijuana is attributable to the defendant."  PSR ¶ 46, at 14.  The PSR includes a 2-

level upward adjustment under U.S.S.G. § 3B1.1(c) based on Vigil's status as an "organizer, leader,

manager, or supervisor" in the criminal activity at issue.  PSR ¶ 47, at 14.  The PSR includes a 2-

level upward adjustment under U.S.S.G. § 3B1.3(c) based on Vigil abusing a position of trust during

the commission of her offense.  See PSR ¶ 50, at 14-15.  The PSR includes a 3-level reduction under

U.S.S.G. § 3E1.1 based on Vigil's acceptance of responsibility.  See PSR ¶ 53, at 15.  The PSR lists

her criminal history category as I, based on 0 criminal history points.  See PSR ¶ 57, at 16.  The PSR

calculates that an offense level of 31 and a criminal history category of I results in a guideline

imprisonment range of 108 to 135 months.  See PSR ¶ 102, at 25.

On February 10, 2012, Vigil filed her Motion.  Under rule 17(c) of the Federal Rules of

Criminal Procedure, she "moves the Court to authorize Defendant Vigil to issue subpoenas duces

tecum for documentary evidence in order to secure for the defense team twenty (20) days after service the requested evidentiary materials for her sentencing hearing." Motion at 1.  She notes that she "intends to introduce evidence at the sentencing hearing that she is not a leader of the conspiracy as portrayed in her presentence report." Motion at 1.  She requests subpoenas duces tecum for the production of the following evidence:

> a.    Video surveillance recordings from "Joe's Smoke Shop," a business located at 2529 San Mateo Blvd NE, Albuquerque, New Mexico, 87110 on January 25, 26, or 27, from 3 to 8 p.m.  The video and audio recordings will capture Ortega and Grey inside the store purchasing drug paraphernalia and discussing the conspiracy at issue in this case.
>
> b.    Cellular telephone records of Allen Yeh, who was contacted by Angelica Ortega after her arrest in this matter.  Ms. Ortega inquired of Mr. Yeh about purchasing oxycodone, but Mr. Yeh declined to provide her any.  Defendant Vigil is under the impression from speaking to Mr. Yeh that his cellular telephone records from T-Mobile for his number 505 620 8268 or any other T-Mobile phone that he may have used from July through December of 2010 will show that Ms. Ortega repeatedly called him to inquire about purchasing oxycodone.
>
> c.    The Cricket cell phone records of Angelica Ortega, a co-defendant in this matter.  As with Allen Yeh's records, Ms. Ortega's records will show that she repeated called Allen Yeh about acquiring oxycodone.

Motion at 2.  She relates that "[t]his motion is filed under seal as an ex parte motion because if counsel were to provide notice to the government about the contents and nature of the material sought, defense counsel would have to disclose evidence that would reveal confidential work product."  Motion at 2.  She argues that an ex parte subpoena is appropriate, "because '[f]orcing any defendant to confront the choice between issuing a pre-trial subpoena duces tecum and disclosing his defense to the Government places an unconstitutional limitation on the defendant's right to compulsory process.'"  Motion at 3 (quoting United States v. Beckford, 964 F.Supp. 1010, 1027 (E.D. Va. 1997)).  She requests that the Court order production of "the requested evidence to

counsel's office no later than twenty days after the service of the requested subpoenas."  Motion at

8-9.  She also asks that the Court not unseal the Motion if the United States were to request that the

Court unseal the Motion.  See Motion at 8.

## RELEVANT LAW REGARDING RULE 17(c)

Rule 17(c) of the Federal Rules of Criminal Procedure states:

(c)   **Producing Documents and Objects.**

    (1)   **In General.**  A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

    (2)   **Quashing or Modifying the Subpoena.**  On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

    (3)   **Subpoena for Personal or Confidential Information About a Victim.**  After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order.  Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

Fed. R. Crim. P. 17(c).  As the Supreme Court of the United States noted in Bowman Dairy Co. v.

United States, 341 U.S. 214 (1951), a subpoena is not intended to provide a means of discovery.

See 341 U.S. at 220.  See also United States v. Badonie, No. CR-03-2062, 2005 WL 2312472, at *1

(D.N.M. Aug. 10, 2005)(Browning, J.)("A subpoena is not a discovery substitute.").  The Supreme

Court has stated:

[T]o require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot

properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

United States v. Nixon, 418 U.S. 683, 699-700 (1974)(footnote omitted).  See United States v. Abdush-Shakur, 465 F.3d 458, 467 (10th Cir. 2006); United States v. Padilla, No. 09-3598, 2011 WL 1103872, at *3 (D.N.M. Mar. 14, 2011)(Browning, J.); United States v. Badonie, 2005 WL 2312472, at *1 ("[A] criminal subpoena requires that the requested information have: (i) relevancy; (ii) admissibility; and (iii) specificity.  The subpoena cannot be for a general 'fishing expedition,' and the requested information must be necessary to properly prepare for trial.").

Courts have disagreed whether rule 17(c) permits ex parte proceedings for subpoenas duces tecum, in part because the language contained in rule 17(c) does not expressly permit ex parte proceedings.  Compare United States v. Urlacher, 136 F.R.D. 550, 552 (W.D.N.Y. 1991)("Rule 17(c), however, simply does not support an ex parte application for such a subpoena, and the defendant has provided no other reason why the court should grant his request without benefit of notice to others involved."), with United States v. Beckford, 964 F.Supp. 1010, 1029 (E.D. Va. 1997)(stating that "[t]he textual rationale" that courts not permitting ex parte applications under rule 17(c) have followed "is not persuasive . . . because the text of the rule neither permits nor forecloses the employment of ex parte process").  Rule 17(b), on the other hand, expressly permits ex parte proceedings for subpoenas of witnesses.  See Fed. R. Crim. P. 17(b) ("Upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense.").

Courts that have not permitted ex parte proceedings and/or applications under rule 17(c) have

relied on the difference in language between rule 17(c) and rule 17(b), and the problematic nature

of ex parte proceedings.  As the Honorable Edward W. Nottingham, United States District Judge of

the District of Colorado, explained:

> The scheme of rule 17 supports the view that Congress intended to distinguish between pretrial subpoenas duces tecum and trial subpoenas ad testificandum, at least insofar as ex parte procedures are concerned.  According to the plain language of rule 17(b), the ex parte procedure is available only (1) to indigent defendants and (2) for the production of witnesses at trial.  The ex parte procedure was developed to aid indigent defendants.  There is no suggestion in these cases that the ex parte procedure would be available for financially able defendants such as Hart.
>
> In addition, defendant does not cite any authority which suggests that the ex parte procedure is available for the production of documents.  On the contrary, the mechanism for obtaining documents, rule 17(c), negates any assumption that production should be on an ex parte basis.  The plain language of rule 17(c) could not be clearer.  Where a defendant seeks the production of documents prior to trial, the court may permit these documents "to be inspected by the parties and their attorneys."  There can be no right to an ex parte procurement of subpoenaed documents pretrial if the court has discretion to supervise their production by permitting both parties to inspect them prior to trial.
>
> By requesting an ex parte review of documents before trial, defendant is attempting to convert rule 17(c) into a grand jury-type procedure for private litigants.  The courts, however, have uniformly held that rule 17(c) subpoenas may not be used as a discovery device.  Defendant's suggested use of rule 17(c) would clearly eviscerate the courts' admonition.

United States v. Hart, 826 F.Supp. 380, 381 (D. Colo. 1993)(citations omitted).  Judge Nottingham

also recognized that there is a "presumption in favor of a first amendment right to access to pretrial

criminal proceedings," which "would be undermined by permitting an ex parte inspection of pretrial

documents."  United States v. Hart, 826 F.Supp. at 381.

Other courts concluding that ex parte proceedings are not appropriate have focused on rule

17(c)'s language which provides that both the parties and attorneys are permitted to inspect the

subpoenaed documents.  See Fed. R. Crim. P. 17(c) ("When the items arrive, the court may permit

the parties and their attorneys to inspect all or part of them."); United States v. Urlacher, 136 F.R.D. at 554 ("Discretion is also given the court to provide with respect to the subpoenaed items, presumably in an appropriate order, 'upon their production . . . . [for] inspect[ion] by the parties and their attorneys.'" (emphasis in original)(quoting Fed. R. Crim. P. 17(c))).  The Honorable Kenneth R. Fisher, United States Magistrate Judge for the Western District of New York, also recognized that, while in camera review of material subpoenaed under rule 17(c) may in some cases be appropriate, it did not follow that a defendant should have the ability to have the proceedings take place ex parte:

> It may be that the defendant or the evidence custodian will have a legitimate interest in securing an in camera review by the court of the documents demanded for the purpose of obtaining a determination that the subpoena duces tecum attempts improper discovery of nonevidentiary material, or that it seeks privileged material. But the allowance for in camera review in such circumstances does not also mean that an otherwise ex parte or secret proceeding is authorized in other than the situations contemplated in Rule 17(b) and 18 U.S.C. § 3006A(e).

United States v. Urlacher, 136 F.R.D. at 556.

Courts that have permitted ex parte proceedings under rule 17(c) have done so by analogizing to rule 17(b), which permits ex parte proceedings.  The Honorable Robert E. Payne, United States District Judge for the Eastern District of Virginia, has concluded that "[t]he textual rationale" that courts not permitting ex parte applications under rule 17(c) have followed "is not persuasive . . . because the text of the rule neither permits nor forecloses the employment of ex parte process."  United States v. Beckford, 964 F.Supp. at 1029.  Judge Payne also held that some courts' concerns regarding "a First Amendment right of access to pre-trial criminal proceedings" have been "significantly overstated," and found that the "right to access is not . . . an absolute one."  United States v. Beckford, 964 F.Supp. at 1029.  Nevertheless, Judge Payne determined that "Rule 17(c) authorizes ex parte procedure with respect to the issuance of pretrial subpoenas only in exceptional

circumstances," because, "[o]rdinarily, ex parte procedure will be unnecessary and thus inappropriate." United States v. Beckford, 964 F.Supp. at 1030. He concluded that such procedures would potentially be appropriate in circumstances such as when the "mere disclosure of the application for a pre-trial subpoena would: (i) divulge trial strategy, witness lists or attorney work-product; (ii) imperil the source or integrity of subpoenaed evidence; or (iii) undermine a fundamental privacy or constitutional interest of the defendant." United States v. Beckford, 964 F.Supp. at 1030. Other courts have similarly held that, while rule 17(c) may not contemplate ex parte proceedings, such procedures may be appropriate in extraordinary cases. See United States v. Stewart, No. 96-583, 1997 WL 103700, at * (E.D. Pa. 1997)("The plain language of Rule 17(c) does not contemplate an ex parte procedure, at least not absent extraordinary circumstances. . . . The government has not established that secrecy is required to preserve the source or integrity of evidence."). As the Honorable Raymond L. Erickson, United States Magistrate Judge for the District of Minnesota, explained:

> Lastly, we are troubled by the ex parte nature of the Defendant's application. While we understand the Defendant's concern, that his defensive strategies and work product might be divulged unless his request for the Subpoenas can be insulated from the Government's view, such a concern, however real, is unalterably short-lived. In this instance, the Defendant contemplates an objection from the University and, quite properly, has scheduled the return date of the Subpoena so as to facilitate the Court's resolution of an anticipated Motion to Quash. Undoubtedly, the Government is entitled to participate in that exchange, should it arise, and Rule 17(c) expressly contemplates the review of documents so subpoenaed by the other parties to the dispute. Accordingly, whatever secrecy might now be imposed upon the scope of the Defendant's document request would, of necessity, be fleeting. Frankly, we regard the Defendant's interest in proceeding ex parte as being largely attributable to some misperception of the purpose to be served, by the production of documents in advance of trial, as contemplated by Rule 17(c).
>
> Of course, we need not hold, and do not hold, that every Subpoena duces tecum requires a disclosure of its contents to the opposing party, for Rule 17(c) does not evince any such intent. Rather, we only decide that, when the Rule is utilized for the disclosure of evidentiary materials in advance of trial, the application should be

reviewable by the other parties to that proceeding. . . . While we are not inclined to be so categorical, we would merely note that, in our view, the evidentiary documents, which the Defendant may appropriately request, do not, even inferentially, disclose any of his work product or litigation strategies.

United States v. Najarian, 164 F.R.D. 484, 488 (D. Minn. 1995).

## LAW REGARDING CIVIL SUBPOENAS

Rule 45 of the Federal Rules of Civil Procedure governs the subpoena power of a federal district court, and rule 45 provides that a subpoena can be served in a number of places:

Subject to Rule 45(c)(3)(A)(ii), a subpoena may be served at any place:

(A)     within the district of the issuing court;

(B)     outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection;

(C)     within the state of the issuing court if a state statute or court rule allows service at that place of a subpoena issued by a state court of general jurisdiction sitting in the place specified for the deposition, hearing, trial, production, or inspection; or

(D)     that the court authorizes on motion and for good cause, if a federal statute so provides.

Fed. R. Civ. P. 45(b)(2).   Rule 45 requires a court to quash or modify a subpoena when certain conditions occur:

(A)     **When Required.**  On timely motion, the issuing court must quash or modify a subpoena that:

(i)     fails to allow a reasonable time to comply;

(ii)     requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person -- except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii)     requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

-9-

<div style="margin-left:2em">(iv)     subjects a person to undue burden.</div>

Fed. R. Civ. P. 45(c)(3)(A).  "[E]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information."  <u>Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2</u>, 197 F.3d 922, 925 (8th Cir. 1999). Rule 45(b)(1) requires that "notice must be served on each party" before the service of a "subpoena [that] commands the production of documents, electronically stored information, or tangible things or the inspection of premises."  Fed. R. Civ. P. 45(b)(1).  There is no provision in rule 45 requiring that a party issue notice to opposing parties of a subpoena seeking only witness testimony, but parties in a civil case must disclose, under rule 26(a)(1)(A)(i), "the name and, if known, the address and telephone number of each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  Additionally, rule 30(b)(1) requires that "[a] party who wants to depose a person by oral questions . . . give reasonable written notice to every other party."  Fed. R. Civ. P. 30(b)(1).

## <u>CONSTITUTIONAL RIGHTS OF INDIGENT CRIMINAL DEFENDANTS</u>

In <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963), the Supreme Court held that indigent defendants have a right to counsel under the Sixth Amendment to the United States Constitution. <u>See</u> 372 U.S. at 342-45.  In <u>Griffin v. Illinois</u>, 351 U.S. 12 (1956), the Supreme Court held that equal protection and due process required Illinois to implement procedures for indigent criminal defendants to have transcripts made for them to effectuate their appeals:

<div style="margin-left:2em">All of the States now provide some method of appeal from criminal convictions, recognizing the importance of appellate review to a correct adjudication of guilt or innocence.  Statistics show that a substantial proportion of criminal</div>

convictions are reversed by state appellate courts. Thus to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside. Many States have recognized this and provided aid for convicted defendants who have a right to appeal and need a transcript but are unable to pay for it. A few have not. Such a denial is a misfit in a country dedicated to affording equal justice to all and special privileges to none in the administration of its criminal law. There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.

351 U.S. at 16-19 (footnotes omitted). The Supreme Court extended that right and required States to waive filing fees for appeals for indigent defendants, because "once the State chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty." Burns v. Ohio, 360 U.S. 252, 257 (1959).

In Douglas v. California, 372 U.S. 353 (1963), the Supreme Court imposed on the States the requirement that they afford counsel to indigent defendants as part of mandatory appeals, because otherwise the indigent defendants' rights to equal protection would be violated. See 372 U.S. at 357-58 ("There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent . . . is forced to shift for himself."). The Supreme Court has limited that right when the appeal is frivolous given the additional burden placed on States to pay for a frivolous appeal. See Smith v. Robbins, 528 U.S. 529, 277-78 (2000)("For although, under Douglas, indigents generally have a right to counsel on a first appeal as of right, it is equally true that this right does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal."). States are also not required to pay for counsel for indigent defendants for discretionary appeals:

Despite the tendency of all rights 'to declare themselves absolute to their logical extreme, there are obviously limits beyond which the equal protection

-11-

analysis may not be pressed without doing violence to principles recognized in other decisions of this Court.  The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,' nor does it require the State to 'equalize economic conditions.'  It does require that the state appellate system be 'free of unreasoned distinctions,' and that indigents have an adequate opportunity to present their claims fairly within the adversary system.  The State cannot adopt procedures which leave an indigent defendant 'entirely cut off from any appeal at all,' by virtue of his indigency, or extend to such indigent defendants merely a 'meaningless ritual' while others in better economic circumstances have a 'meaningful appeal.'  The question is not one of absolutes, but one of degrees.  In this case we do not believe that the Equal Protection Clause, when interpreted in the context of these cases, requires North Carolina to provide free counsel for indigent defendants seeking to take discretionary appeals to the North Carolina Supreme Court, or to file petitions for certiorari in this Court.

Ross v. Moffitt, 417 U.S. 600, 611 (1974).  The Supreme Court has

contrasted the trial stage of a criminal proceeding, where the State by presenting witnesses and arguing to a jury attempts to strip from the defendant the presumption of innocence and convict him of a crime, with the appellate stage of such a proceeding, where the defendant needs an attorney not as a shield to protect him against being haled into court by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt.

Murray v. Giarratano, 492 U.S. 1, 7 (1989)(quoting Ross v. Moffitt, 417 U.S. at 610-611)(internal quotation marks omitted).  The Supreme Court further extended the logic of Ross v. Moffitt by concluding that prisoners do not have a right to representation of counsel in postconviction proceedings.  See Pennsylvania v. Finley, 481 U.S. 551, 556-57 (1987)("Postconviction relief is even further removed from the criminal trial than is discretionary direct review.  It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature.").

## ANALYSIS

The Court will grant the Motion in part and deny the Motion in part.  While the Court believes that rule 17(c) permits ex parte procedures for indigent defendants, the Court will direct the witness to produce the designated items in Court.  Thus, the Court will not permit production of the requested evidence at the office of Vigil's counsel.  The Court otherwise believes that the requests

-12-

for subpoenas are appropriate and will permit the issuance of the subpoenas.  The Court will order

free process to serve the subpoenas because Vigil is indigent.  Consistent with rule 17(c)(1), the

Court may permit the parties and their attorneys to inspect all or part of the requested evidence when

it arrives.

## I.   RULE 17(c) ALLOWS, CONSISTENT WITH RULE 17(b) PROCEDURES, EX PARTE PROCEDURES FOR A SUBPOENA DUCES TECUM.

Unlike rule 45(b)(1) of the Federal Rules of Civil Procedures, a subpoena duces tecum issued

under rule 17(c) of the Federal Rules of Criminal Procedure does not require notice to anyone --

other than to victims of crimes under some circumstances.  Reading into rule 17(c) a restriction that

prevents ex parte proceedings for a subpoena duces tecum under all circumstances raises

constitutional concerns regarding discrimination against indigent defendants.  Nevertheless, the most

well-reasoned authority on the issue reaches the conclusion that rule 17(c) permits subpoenas duces

tecum under only exceptional circumstances.

### A.   RULE 17(c) DOES NOT REQUIRE NOTICE TO THE OPPOSING PARTY.

Rule 17(c) states:

(c)   **Producing Documents and Objects.**

(1)   **In General.**  A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

(2)   **Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

(3)   **Subpoena for Personal or Confidential Information About a Victim.**  After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential

-13-

> information about a victim may be served on a third party only by
> court order. Before entering the order and unless there are
> exceptional circumstances, the court must require giving notice to the
> victim so that the victim can move to quash or modify the subpoena
> or otherwise object.

Fed. R. Crim. P. 17(c).  The entirety of rule 17 refers to providing notice of the subpoena to someone only once, specifically in rule 17(c)(3) where "the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object."   The advisory committee's note to the 2008 amendments to rule 17(c)(3) clarify that there may be exceptional circumstances where it would not be necessary to give notice of the subpoena to anyone under rule 17(c)(3), including the victim:

> The amendment provides a mechanism for notifying the victim, and makes
> it clear that a victim may move to quash or modify the subpoena under Rule 17(c)(2)
> -- or object by other means such as a letter -- on the grounds that it is unreasonable
> or oppressive.  The rule recognizes, however, that there may be exceptional
> circumstances in which this procedure may not be appropriate.  Such exceptional
> circumstances would include, evidence that might be lost or destroyed if the
> subpoena were delayed or a situation where the defense would be unfairly prejudiced
> by premature disclosure of a sensitive defense strategy.  The Committee leaves to the
> judgment of the court a determination as to whether the judge will permit the
> question whether such exceptional circumstances exist to be decided ex parte and
> authorize service of the third-party subpoena without notice to anyone.

Fed. R. Crim. P. 45(c)(3) advisory committee's note to 2008 amendment.  The advisory committee's note to the 1966 amendments to rule 17(b) also discusses that "subpoenas [are] issued in blank without any disclosure."  Fed. R. Crim. P. 17(b) advisory committee's note to 1966 amendment.

Rule 45(b)(1) of the Federal Rules of Civil Procedure, on the other hand, requires that "notice must be served on each party" before the service of a "subpoena [that] commands the production of documents, electronically stored information, or tangible things or the inspection of premises."  Fed. R. Civ. P. 45(b)(1).  Given the exclusion of language requiring notice to the opposing in rule 17 of the Federal Rules of Criminal Procedure and the inclusion of that language

in rule 45(b)(1) of the Federal Rules of Criminal Procedure, the language of these rules warrants a

construction that there is no notice requirement for the opposing side under rule 17 given that

Congress intends similar constructions of related statutes.  See Oscar Mayer & Co. v. Evans, 441

U.S. 750, 756 (1979)(construing two statutes in a similar fashion given that "the ADEA and Title

VII share a common purpose").[3]  The Supreme Court has contrasted between the rules of criminal

procedure and the rules of civil procedure when analyzing a given rule of procedure.  See Black v.

United States, 130 S.Ct. 2963, 2969 (2010)("In addressing this issue, we note first the absence of

any provision in the Federal Rules of Criminal Procedure for submission of special questions to the

jury. . . . In contrast, the Federal Rules of Civil Procedure provide for jury interrogatories of two

kinds: special verdicts . . . and general verdicts . . . .").[4]  Additionally, the United States Court of

---

[3]Courts apply the rules of statutory construction to the federal rules of criminal and civil procedure.  See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)(applying the expressio unius est exclusio alterius canon when interpreting rule 9(b) of the Federal Rule of Civil Procedure); Hillis v. Heineman, 626 F.3d 1014, 1017-18 (9th Cir. 2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure."); In re Kubler, No. 11-0048, 2012 WL 394680, at *11 (D.N.M. Jan. 25, 2012)(Browning, J.)("The rules of statutory construction apply to the Federal Rules . . . .").

[4]The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure are adopted in the same basic manner.  Congress has delegated to the Supreme Court the authority to draft rules of procedure, both civil and criminal.  See 28 U.S.C. § 2072(a) ("The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.").  The Advisory Committee on Civil Rules drafts proposed changes to the civil rules which the Supreme Court can choose to adopt.  See Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 509 F.2d 730, 733 (4th Cir. 1974)("After numerous abortive attempts to reconcile the Rules with Hickman[v. Taylor, 329 U.S. 495 (1947)], the Advisory Committee on Civil Rules finally agreed upon a draft of  Rule 26(b)(3) of the Federal Rules of Civil Procedure. As adopted by the Supreme Court in 1970, Rule 26(b) (3) contains these special provisions . . . ."). Likewise, the Advisory Committee on Criminal Rules drafts proposed changes to the criminal rules which the Supreme Court can choose to adopt.  See Herrera v. Collins, 506 U.S. 390, 409 n.7 (1993)("In response to the second preliminary draft of the Federal Rules of Criminal Procedure, Chief Justice Harlan Stone forwarded a memorandum on behalf of the Court to the Rules Advisory Committee with various comments and suggestions . . . ."); United States v. Moore, 439 F.2d 1107,

Appeals for the Fifth Circuit has noted that it is appropriate to consult a parallel civil or criminal rule of procedure to guide the interpretation of a given rule of procedure. See United States v. Redd, 355 F.3d 866, 874 (5th Cir. 2003)("[O]ur cases dealing with the parallel rule under the Federal Rules of Civil Procedure, Rule 51, may guide our analysis."). Additionally, courts must interpret a statute based on the language that appears in the statute. See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. at 194 ("Statutory construction must begin with the language employed by [the writer] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.").

The case law and commentators indicate that parties in a criminal case do not have to normally seek leave of court or give notice to the opposing side to issue a subpoena duces tecum. As Professors Charles Alan Wright and Peter J. Henning, while discussion a situation when a defendant seeks a subpoena ex parte under rule 17(b), have stated: "Thus, the subpoena can be obtained without any disclosure to the prosecution, and it would seem that the secrecy of the application should be maintained after it is granted." 2 C. Wright & P. Henning, Federal Practice and Procedure § 273, at 246 (4th ed. 2009). Accord United States v. Florack, 838 F.Supp. at 78

---

1108 (6th Cir. 1971)("Amendments to the Federal Rules of Criminal Procedure were adopted by the Supreme Court in 1966, several years after Brady was decided."). 28 U.S.C. § 2074(a) provides additional procedures for adopting the rules of procedure:

> The Supreme Court shall transmit to the Congress not later than May 1 of the year in which a rule prescribed under section 2072 is to become effective a copy of the proposed rule. Such rule shall take effect no earlier than December 1 of the year in which such rule is so transmitted unless otherwise provided by law.

28 U.S.C. § 2074(a). Amendments the Supreme Court adopts become effective so long as Congress does not take any contrary action. See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 257 n.8 (1995)("This Court adopted the Federal Rules of Civil Procedure and submitted them to Congress as the Rules Enabling Act required. They became effective after Congress adjourned without altering them.").

("Obviously, under the . . . procedure [specified in rule 17(a)], leave of courts is not required and no notice need be given to the Government.").  The Fifth Circuit held, in a case rejecting the government's argument that they were entitled to a greater degree of disclosure of the defendant's rule 17(b) subpoenas: "The government should not be able to obtain a list of adverse witnesses in the case of a defendant unable to pay their fees when it is not able to do so in the cases of defendants able to pay witness fees."  United States v. Meriwether, 486 F.2d 498, 506 (5th Cir. 1973).  The United States Court of Appeals for the Fourth Circuit similarly discussed a procedure under rule 17(b) adopted to hide the identity of the defendants' witnesses until trial:

> The court conducted an ex parte proceeding, pursuant to Rule 17(b), at which Espinoza's counsel was requested to reveal to the court the identity of those witnesses and generally what testimony they were expected to give at trial, all for the limited purpose of enabling the court to determine which of them necessarily must, and which need not, be subpoenaed at government expense to be present at Espinoza's trial for his adequate defense.  Espinoza's counsel complied with the court's request "under protest."  The court took effective steps to assure that all such revelations made by Espinoza's counsel would, as they did, remain further undivulged and inviolate.

United States v. Espinoza, 641 F.2d 153, 157 (4th Cir. 1981).

Professors Wright and Henning have also stated: "Leave of court is not ordinarily required for issuance of a subpoena duces tecum, except for a subpoena to a third party for personal or confidential information about a victim."  2 C. Wright & P. Henning, supra § 275, at 262.  "A subpoena is issued by the clerk of the court as a matter of course upon the request of a party."  J. Moore, Moore's Federal Practice § 617.03, at 617-8 to 617-9 (3d ed. 2011).  Notably, while parties sometimes file motions to invoke rule 17(c), which commentators describe as "an orderly and desirable procedure and one frequently followed, . . . the rule does not require it."  2 C. Wright & P. Henning, supra § 275, at 261.  The words "motion" or "move" do not appear in rule 17 other than in reference to a party filing a motion to quash or modify a subpoena.  Fed. R. Crim. P. 47(c).  Rule

-17-

47(c) of the Federal Rules of Criminal Procedure, in comparison, requires a party filing a motion to "serve a written motion -- other than one that the court may hear ex parte -- . . . at least 7 days before the hearing date, unless a rule or court order sets a different period." Fed. R. Crim. P. 47(c).

Some courts have held that, at least for subpoenas duces tecum seeking production of documents before trial as opposed to at trial, rule 17(c) requires a party to submit a motion to invoke its procedures, because "[n]o other construction of Rule 17(c) will permit a district court to properly exercise the discretionary powers conferred under the rule." United States v. Beckford, 964 F.Supp. at 1025. Nevertheless, there are other means for parties to coordinate matters with the Court and with opposing counsel other than through filing motions, such as coordinating with a courtroom deputy to set a matter for a hearing or to issue a minute order. Simply because a given procedure may be more desirable does not permit courts to read words into a statute that are not there. See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985)("Statutory construction must begin with the language employed by [the writer] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."). Drafters of statutes are presumed to understand the legal meaning courts assign to particular words of art -- such as the term motion, see United States v. Yazzie, No. 10-2460, 2011 WL 5223035, at *4 (D.N.M. Oct. 17, 2011)(Browning, J.)("When a statute includes a term with a particular legal meaning based on prior precedent, courts presume that the drafter of the statute intended the term to have that particular legal meaning.") (citing Clay v. United States, 537 U .S. 522, 527 (2003)), and are presumed to adopt provisions with a basic knowledge of the rules of statutory construction, see McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 495 (1991)("It is presumable that Congress legislates with knowledge of our basic rules of statutory construction."). Many other provisions in the Federal Rules of Criminal Procedure expressly refer to filing motions. See Fed. R. Crim. P. 21(a) ("Upon the defendant's motion . . . .");

-18-

id. 26.2(a) ("on motion of a party who did not call the witness"); id. 29(a) ("the court on the

defendant's motion must enter"); id. 35(b)(1) ("Upon the government's motion . . . ."). Lastly, many

challenges to subpoenas are raised as part of a motion to quash the subpoena. See Bowman Dairy

Co. v. United States, 341 U.S. at 220 ("The court may control the use of Rule 17(c) to that end by

its power to rule on motions to quash or modify."); 2 C. Wright & P. Henning, supra § 275, at 261

("[T]he question [of the appropriateness of a subpoena] can be raised as well on a motion to quash,

which is specifically authorized by Rule 17(c)(2).").

        Subpoenas may require a person only to appear at a hearing, trial, or other proceeding in a

court as opposed to any location the party may choose.  "Rule 17(a) permits the issuance of

subpoenas only to compel attendance at formal proceedings such as hearings and trials.  It may not

be used to compel prospective trial witnesses to attend pre-trial interviews with government

attorneys." 2 C. Wright & P. Henning, supra § 272, at 244.  As the United States Court of Appeals

for the Tenth Circuit has stated: "Courts have consistently interpreted Fed.R.Crim.P. 17(a) to permit

the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and

trials." United States v. Villa-Chaparro, 115 F.3d 797, 804 (10th Cir. 1997).  "The general

provisions of the other subdivisions of the rule," such as rule 17(a), "apply on such matters as form

and issuance, defendants unable to pay, and service of the subpoena" for rule 17(c) subpoenas duces

tecum. 2 C. Wright & P. Henning, supra § 275, at 257.  Rule 17(c)(1) also refers to production of

"the designated items in court." Fed. R. Crim. P. 17(c)(1).  As the Tenth Circuit has discussed, a

court can impose an appropriate remedy if either a defendant or the United States abuses the

subpoena process.  See United States v. Villa-Chaparro, 115 F.3d at 805 ("Our refusal to disturb

Defendant's conviction on this basis, however, should not be construed as approval of the

government's practice.  If the government abuses the subpoena power in future cases, the district

court certainly may fashion an appropriate remedy to stop the abuse."). Accordingly, the Court finds

that rule 17 does not require notice to an opposing party.

### B.   NOT PERMITTING EX PARTE PROCEEDINGS UNDER RULE 17(c) CREATES CONSTITUTIONAL PROBLEMS.

In 1966, rule 17(b) of the Federal Rules of Criminal Procedure was amended to permit ex

parte proceedings for indigent defendants.   The advisory committee provided the following

explanation for the change in its note to the 1966 amendment to the rule:

> Criticism has been directed at the requirement that an indigent defendant disclose in advance the theory of his defense in order to obtain the issuance of a subpoena at government expense while the government and defendants able to pay may have subpoenas issued in blank without any disclosure.  In one case it was held that the affidavit filed by an indigent defendant under this subdivision could be used by the government at his trial for purposes of impeachment. There has also been doubt as to whether the defendant need make a showing beyond the face of his affidavit in order to secure issuance of a subpoena.
>
> The amendment makes several changes.   The references to a judge are deleted since applications should be made to the court.  An ex parte application followed by a satisfactory showing is substituted for the requirement of a request or motion supported by affidavit.   The court is required to order the issuance of a subpoena upon finding that the defendant is unable to pay the witness fees and that the presence of the witness is necessary to an adequate defense.

Fed. R. Crim. P. 17(b) advisory committee's note to 1966 amendment (citations omitted).

Following this amendment, the United States Court of Appeals for the First Circuit recognized:

"Rather, even without the committee note we would regard the purpose of the change in the rule as

apparent on its face to be in recognition of the principle that defendants are not to be avoidably

discriminated against because of their indigency."  Holden v. United States, 393 F.2d 276, 278 (1st

Cir. 1968).

The motivation for this change to rule 17(b) came in part from a series of Supreme Court

cases.  For instance, in Griffin v. Illinois, the Supreme Court held that equal protection and due

process required Illinois to implement procedures for indigent criminal defendants to have

transcripts made for them to effectuate their appeals:

> All of the States now provide some method of appeal from criminal convictions, recognizing the importance of appellate review to a correct adjudication of guilt or innocence. Statistics show that a substantial proportion of criminal convictions are reversed by state appellate courts. Thus to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside. Many States have recognized this and provided aid for convicted defendants who have a right to appeal and need a transcript but are unable to pay for it. A few have not. Such a denial is a misfit in a country dedicated to affording equal justice to all and special privileges to none in the administration of its criminal law. There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.

351 U.S. at 16-19 (footnotes omitted). In Coppedge v. United States, 369 U.S. 438 (1962), the

Supreme Court restricted the ability of lower courts to treat cases involving indigent criminal

defendants differently than other criminal cases:

> Statistics compiled in the court below illustrate the undeniable fact that as many meritorious criminal cases come before that court through applications for leave to proceed in forma pauperis as on the paid docket, and that no a priori justification can be found for considering them, as a class, to be more frivolous than those in which costs have been paid. Even-handed administration of the criminal law demands that these cases be given no less consideration than others on the courts' dockets. Particularly since litigants in forma pauperis may, in the trial court, have suffered disadvantages in the defense of their cases inherent in their impecunious condition, is appellate review of their cases any less searching than that accorded paid appeals inappropriate. Indigents' appeals from criminal convictions cannot be used as a convenient valve for reducing the pressures of work on the courts. If there are those who insist on pursuing frivolous litigation, the courts are not powerless to dismiss or otherwise discourage it. But if frivolous litigation exists, we are not persuaded that it is concentrated in this narrow, yet vital, area of judicial duty.

369 U.S. at 450 (footnotes omitted). In Douglas v. California, 372 U.S. 353 (1963), the Supreme

Court imposed on the States the requirement that they afford counsel to indigent defendants as part

of mandatory appeals, because otherwise the indigent defendants rights to equal protection would

-21-

be violated.  See 372 U.S. at 357-58 ("There is lacking  that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent . . . is forced to shift for himself.").

Barriers that indigent defendants face at the trial stage of a criminal case receive more constitutional scrutiny, because the Supreme Court has

> contrasted the trial stage of a criminal proceeding, where the State by presenting witnesses and arguing to a jury attempts to strip from the defendant the presumption of innocence and convict him of a crime, with the appellate stage of such a proceeding, where the defendant needs an attorney not as a shield to protect him against being haled into court by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt.

Murray v. Giarratano, 492 U.S. at 7.  The Tenth Circuit has recognized that there is not an unqualified right to a subpoena under rule 17(b), reviewing the district court's decision to grant or deny the subpoena for abuse of discretion.  See United States v. Greschner, 802 F.2d 373, 378 (10th Cir. 1986).  It has held, however, that the Fifth Amendment right to equal protection and the Sixth Amendment right to compulsory process "require that the trial court give due consideration to the constitutional rights involved" in denying the request for a subpoena under rule 17(b).  United States v. Greschner, 802 F.2d 373, 378 (10th Cir. 1986).

In United States v. Florack, 838 F.Supp. 77 (W.D.N.Y. 1993), the United States District Court for the Western District of New York permitted ex parte proceedings under rule 17(c) in part based on some of these concerns regarding discrimination against indigent defendants:

> I believe that a subpoena duces tecum is just a type of subpoena that can be issued either under Rule 17(a) if the applicant tenders the requisite fees or, under Rule 17(b) if the applicant is indigent.

> The language of Rule 17(c) suggests this result.  In pertinent part, the first sentence of that section reads as follows: "A subpoena may also command the person

-22-

to whom it is directed to produce the books, papers, documents . . . ." (emphasis added).  The word "also" suggests that the subpoena described above, that is in Rule 17(a) and Rule 17(b), in addition to requiring the person to attend, may also require that person to produce books, records, and documents.  Therefore, Rule 17(c) should be interpreted in accordance with the provisions of Rule 17(a) and (b).

Rule 17(a) describes the process for obtaining all types of subpoenas by those who are able to pay for them.  Rule 17(b) describes the process for obtaining all subpoenas by those unable to pay the requisite fees.  Rule 17(c) describes special matters concerning a subpoena duces tecum, for example, it provides a means to quash the subpoena and it authorizes the issuing court discretion to direct that the subpoenaed documents be produced in advance of trial and made available to both sides for inspection.  It is, or course, true that Rule 17(c) does not specifically discuss a process for obtaining such subpoenas by an ex parte application.  It is also true, however, that the section does not describe any process for obtaining the subpoena.  Nothing in Rule 17(c) suggests that the initial application should be any different from the application for a subpoena which does not happen to require that the subpoenaed witness produce documents.

Based on my interpretation of Rule 17, I conclude that an indigent defendant is also entitled to an ex parte procedure for obtaining a subpoena duces tecum to compel the production of witnesses and documents for a hearing or trial.  Whether a defendant seeks to subpoena a witness or a witness with documents should not effect the process that Congress created.  In order to shield defendants from premature disclosure of their evidence, the 1966 amendment was designed to permit all defendants, regardless of financial ability, to subpoena witnesses without having to reveal their trial strategy.  To refuse an ex parte procedure to an indigent defendant who seeks a subpoena duces tecum would create the "Hobson's choice" that Congress intended to eliminate in its 1966 amendment to Rule 17.

I also believe that the Fifth Amendment requires such a result.  A criminal defendant's right to subpoena and present witnesses and evidence rests not only on Rule 17(b), but also on "the Fifth Amendment right not to be subjected to disabilities by the criminal justice system because of financial status . . . ."  Therefore to conclude that Rules 17(a) and 17(c) permit an individual of financial means to subpoena both witnesses and documents without notice to the Government, while Rules 17(b) and 17(c) only allow an indigent defendant to subpoena witnesses, would result in a disability based on financial status in violation of the Fifth Amendment.  Therefore, in order to be consistent with the Fifth Amendment, Rule 17(c) must be read as authorizing an ex parte procedure for indigent defendants seeking to subpoena records.

838 F.Supp. at 79.  Professors Wright and Henning have stated: "The district court in U.S. v. Florack

seems clearly right in construing rule 17(b) as applying to a subpoena duces tecum as well as to a

subpoena to testify." 2 C. Wright & P. Henning, supra § 273, at 247-48.  Similarly, Professor James

Wm. Moore has recognized: "Application for the [rule 17(c)] subpoena by indigent defendants may

be made ex parte even though Rule 17 does not so specifically provide."  J. Moore, Moore's Federal

Practice § 617.08[1], at 617-20 to 617-21 (3d ed. 2011).  Notably, the canon of construction

requiring that courts interpret statutes in a manner that avoids constitutional problems also counsels

in favor of interpreting rule 17(c) as permitting ex parte proceedings.  See Clark v. Martinez, 543

U.S. 371, 380-81 (2005)("[W]hen deciding which of two plausible statutory constructions to adopt,

a court must consider the necessary consequences of its choice.  If one of them would raise a

multitude of constitutional problems, the other should prevail -- whether or not those constitutional

problems pertain to the particular litigant before the Court.").  The Court is mindful of this concern,

given that barriers indigent defendants face at the trial stage of a criminal case receive more

constitutional scrutiny, because the Supreme Court has

> contrasted the trial stage of a criminal proceeding, where the State by presenting
> witnesses and arguing to a jury attempts to strip from the defendant the presumption
> of innocence and convict him of a crime, with the appellate stage of such a
> proceeding, where the defendant needs an attorney not as a shield to protect
> him against being haled into court by the State and stripped of his presumption of
> innocence, but rather as a sword to upset the prior determination of guilt.

Murray v. Giarratano, 492 U.S. at 7.

## C.  RULE 17(c) PERMITS EX PARTE PROCEEDINGS UNDER THE SAME CIRCUMSTANCES AS RULE 17(b) WOULD PERMIT.

As the Western District of New York in United States v. Florack concluded, the structure

of rule 17 is such that there is a fair construction that rule 17(c) also permits ex parte proceedings

as opposed to only rule 17(b) allowing ex parte proceedings:

> The language of Rule 17(c) suggests this result.  In pertinent part, the first
> sentence of that section reads as follows: "A subpoena may also command the person
> to whom it is directed to produce the books, papers, documents . . . ." (emphasis

-24-

added).  The word "also" suggests that the subpoena described above, that is in Rule 17(a) and Rule 17(b), in addition to requiring the person to attend, may also require that person to produce books, records, and documents.  Therefore, Rule 17(c) should be interpreted in accordance with the provisions of Rule 17(a) and (b).

Rule 17(a) describes the process for obtaining all types of subpoenas by those who are able to pay for them.  Rule 17(b) describes the process for obtaining all subpoenas by those unable to pay the requisite fees.  Rule 17(c) describes special matters concerning a subpoena duces tecum, for example, it provides a means to quash the subpoena and it authorizes the issuing court discretion to direct that the subpoenaed documents be produced in advance of trial and made available to both sides for inspection.  It is, or course, true that Rule 17(c) does not specifically discuss a process for obtaining such subpoenas by an ex parte application.  It is also true, however, that the section does not describe any process for obtaining the subpoena. Nothing in Rule 17(c) suggests that the initial application should be any different from the application for a subpoena which does not happen to require that the subpoenaed witness produce documents.

838 F.Supp. at 79 (citations omitted).  The United States Court of Appeals for the Eighth Circuit

followed the district court in United States v. Florack.  See United States v. Hang, 75 F.3d 1275,

1282 (8th Cir. 1996)("We are persuaded by the well-reasoned analysis in Florack.  That court

focused upon the wording of Rule 17(c), emphasizing language which provides that a subpoena may

'also' require a person to produce documents.").  District courts have come to different conclusions

in trying to determine whether rule 17(c) permits ex parte proceedings with some concluding,

contrary to the opinion in United States v. Florack, that ex parte proceedings are never permissible.

Compare United States v. Urlacher, 136 F.R.D. at 552 ("Rule 17(c), however, simply does not

support an ex parte application for such a subpoena, and the defendant has provided no other reason

why the court should grant  his request without benefit of notice to others involved."), with United

States v. Florack, 838 F.Supp. at 79 ("Whether a defendant seeks to subpoena a witness or a witness

with documents should not effect [sic] the process that Congress created.").  Given that the Supreme

Court has decided several cases striking down procedures that have discriminated against indigent

defendants, serious constitutional concerns attach to an interpretation barring ex parte proceedings

given that non-indigent defendants can obtain subpoenas duces tecum without leave of court and without notice to the opposing side.  See Clark v. Martinez, 543 U.S. at 380-81 ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice.  If one of them would raise a multitude of constitutional problems, the other should prevail -- whether or not those constitutional problems pertain to the particular litigant before the Court.").

The Court believes that, in deciding this issue, it is important to consider as a starting point and as background that parties are not obligated to give notice to the opposing party to issue a subpoena duces tecum and that leave of court is not generally necessary to obtain a subpoena.  See United States v. Florack, 838 F.Supp. at 78 ("Obviously, under the . . . procedure [specified in rule 17(a)], leave of courts is not required and no notice need be given to the Government."); 2 C. Wright & P. Henning, supra § 275, at 262 ("Leave of court is not ordinarily required for issuance of a subpoena duces tecum, except for a subpoena to a third party for personal or confidential information about a victim.").  Given that defendants and the United States, who are able to pay for subpoenas duces tecum, do not need to give notice to the opposing party to obtain a subpoena duces tecum, and for other reasons based on the language of rule 17, the Court concludes that indigent defendants may take advantage of rule 17(b) ex parte applications for rule 17(c) subpoenas.  As the Fifth Circuit has stated: "The government should not be able to obtain a list of adverse witnesses in the case of a defendant unable to pay their fees when it is not able to do so in the cases of defendants able to pay witness fees."  United States v. Meriwether, 486 F.2d at 506.  Thus, particularly because the language of rule 17 permits the construction as discussed in United States v. Florack, see 838 F.Supp. at 79, the Court believes that the construction of rule 17 that permits ex parte applications for rule 17(c) subpoenas is the better construction of the rule to protect indigent defendants' rights,

see Clark v. Martinez, 543 U.S. at 380-81.

The Court concludes that obtaining rule 17(c) subpoenas through ex parte proceedings is appropriate under the same restrictions on rule 17(b) ex parte proceedings. Thus, the Court believes it is appropriate to entertain the application ex parte. The Court may grant the request for subpoenas duces tecum when "the defendant shows an inability to pay the . . . fees" for the subpoenas duces tecum "and the necessity of the" requested materials to present "an adequate defense." Fed. R. Crim. P. 17(b). The Court may permit production before a trial or hearing at issue when the defendant satisfies the factors the Supreme Court specified in United States v. Nixon:

> [T]o require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

United States v. Nixon, 418 U.S. at 699-700 (footnote omitted).[5]

Given the limitations the Supreme Court has imposed in United States v. Nixon, the Court does not believe that imposing additional requirements on ex parte applications for subpoenas duces tecum, as some district courts have done, is necessary. For instance, Judge Payne held that "Rule 17(c) authorizes ex parte procedure with respect to the issuance of pretrial subpoenas only in exceptional circumstances," because, "[o]rdinarily, ex parte procedure will be unnecessary and thus inappropriate." United States v. Beckford, 964 F.Supp. at 1030. He concludes that such procedures

---

[5]Notably, given that production of subpoenaed evidence may occur before trial, a subpoena duces tecum under rule 17(c) may in some instances seek only documentary evidence rather than testimony. See Bowman Dairy Co. v. United States, 341 U.S. at 219 ("[Rule 17(c)'s] chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials.").

would potentially be appropriate in circumstances such as when the "mere disclosure of the application for a pre-trial subpoena would: (i) divulge trial strategy, witness lists or attorney work-product; (ii) imperil the source or integrity of subpoenaed evidence; or (iii) undermine a fundamental privacy or constitutional interest of the defendant." United States v. Beckford, 964 F.Supp. at 1030. The Court sees no textual basis in rule 17 for imposing an exceptional circumstances requirement, particularly given the standards the Supreme Court has adopted for rule 17(c) in United States v. Nixon. Given that the United States and criminal defendants with assets can secure blank subpoenas and subpoenas duces tecum from the Court and do not have to serve or have to give notice to the other side, the Court sees no sound reason to require indigent defendants to notify the other side at this stage.

The Court is not inclined, however, to permit the documents to be produced at the office of Vigil's attorneys. Under rule 17(c), "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1). Additionally, the Court under rule 17(c) "may permit the parties and their attorneys to inspect all or part of" the produced evidence. Fed. R. Crim. P. 17(c)(1). As the Court has already discussed, "Rule 17(a) permits the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and trials. It may not be used to compel prospective trial witnesses to attend pre-trial interviews with government attorneys." 2 C. Wright & P. Henning, supra § 272, at 244. As the Tenth Circuit has stated: "Courts have consistently interpreted Fed. R. Crim. P. 17(a) to permit the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and trials." United States v. Villa-Chaparro, 115 F.3d at 804.[6] Thus, the risk of improper conduct is reduced

---

[6]If the Court, however, denies the ex parte application, the defendant may still keep the application a secret from the United States: "The fact that a court 'may' order subpoenaed materials

given that the rule 17(c) process is monitored by the district court and given that the production may occur at the Court.  While the courts that have not allowed ex parte proceedings for a subpoena duces tecum are right that the secrecy may be short-lived, timing may be everything in a case.  Work product is confidential before trial, but may be selectively disclosed at trial.  An ex parte application at least gives the defendant the ability to selectively disclose work product without the United States learning about it, even if the United States may eventually learn the matters the defendant does not want disclosed.  Furthermore, as the Court has already discussed, imposing too many hurdles on indigent defendants would be inappropriate given that rule 17 subpoenas do not require notice to the opposing party as a general matter.  While the Court recognizes the potential problems ex parte procedures can create, it believes that the provisions of rule 17(c) and the Supreme Court's United States v. Nixon factors provide a district court with adequate tools to prevent abuse without the necessity of imposing additional hurdles for obtaining subpoenas duces tecum -- such as an exceptional circumstances requirement.  Moreover, because this ex parte procedure would apply only to indigent defendants as reflected in rule 17(b), there would be no risk that the United States would engage in secret contact with courts under comparable circumstances, although the United States of course engages in ex parte contact with the Court in other contexts -- such as in the context of warrants and grand-jury proceedings -- and can secure a subpoena duces tecum in blank without any contact with the Court.[7]

---

produced prior to trial does not mean that an ex parte application is necessarily superfluous; indeed, the ex parte nature of the procedure will not vanish if the court exercises its discretion not to order production."  United States v. Reyes, 162 F.R.D. 468, 470 (S.D.N.Y. 1995).

[7]As the United States Court of Appeals for the Third Circuit has discussed, grand jury subpoenas proceed somewhat differently, because there are not yet any criminal charges and thus the persons subject to subpoenas are almost always the ones who raise the challenges to the subpoenas:

## II.   **THE COURT WILL GRANT THE REQUEST FOR SUBPOENAS DUCES TECUM.**

Rule 17(b) provides:

> Upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense.  If the court orders a subpoena to be issued, the process costs and witness fees will be paid in the same manner as those paid for witnesses the government subpoenas.

Fed. R. Crim. P. 17(b).  As the Supreme Court noted in <u>Bowman Dairy Co. v. United States</u>, a rule

17(c) subpoena duces tecum is not intended to provide a means of discovery.  <u>See</u> 341 U.S. at 220.

The Supreme Court has stated, in the context of subpoenas duces tecum that request production

before a proceeding such as trial:

> [T]o require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that  the application is made in good faith and is not intended as a

---

> Although grand jury subpoenas are issued in the name of the district court, they are issued pro forma and in blank to anyone requesting them without prior court approval or control.    These subpoenas are "in fact almost universally instrumentalities of the United States Attorney's office or of some other department of the executive branch."
>
> Because this subpoena power may be abused, Fed. R. Crim. P. 17(c) gives the district court, on motion, the power to quash or modify a subpoena duces tecum "if compliance would be unreasonable or oppressive."  As this court pointed out in <u>In re Pantojas</u>, [628 F.2d 701, 704-05 (1st Cir. 1980)], "[t]he practical responsibility for controlling grand jury excesses lies with the district court, on which the grand jury must rely for subpoena [enforcement] and contempt procedures."

<u>In re Grand Jury Matters</u>, 751 F.2d 13, 16 (3d Cir. 1984)(footnote omitted)(citations omitted). Courts likewise exercise little control over the use of grand-jury subpoenas until they are challenged. <u>See</u> <u>In re Grand Jury Proceedings</u>, 486 F.2d 85, 90 (3d Cir. 1973)("[A]lthough like all federal court subpoenas grand jury subpoenas are issued in the name of the district court over the signature of the clerk, they are issued pro forma and in blank to anyone requesting them.  The court exercises no prior control whatsoever upon their use.").

general "fishing expedition."

United States v. Nixon, 418 U.S. at 699-700 (footnote omitted).

First, the Court believes the requested information is evidentiary and relevant. Vigil requests subpoenas duces tecum for the production of the following evidence:

>    a.    Video surveillance recordings from "Joe's Smoke Shop," a business located at 2529 San Mateo Blvd NE, Albuquerque, New Mexico, 87110 on January 25, 26, or 27, from 3 to 8 p.m. The video and audio recordings will capture Ortega and Grey inside the store purchasing drug paraphernalia and discussing the conspiracy at issue in this case.
>
>    b.    Cellular telephone records of Allen Yeh, who was contacted by Angelica Ortega after her arrest in this matter. Ms. Ortega inquired of Mr. Yeh about purchasing oxycodone, but Mr. Yeh declined to provide her any. Defendant Vigil is under the impression from speaking to Mr. Yeh that his cellular telephone records from T-Mobile for his number 505 620 8268 or any other T-Mobile phone that he may have used from July through December of 2010 will show that Ms. Ortega repeatedly called him to inquire about purchasing oxycodone.
>
>    c.    The Cricket cell phone records of Angelica Ortega, a co-defendant in this matter. As with Allen Yeh's records, Ms. Ortega's records will show that she repeated called Allen Yeh about acquiring oxycodone.

Motion at 2. The first piece of requested information is video footage that allegedly captures two of the co-Defendants in this case, Ashley Gray and Angelica Ortega, discussing the conspiracy at issue in this case. That information could relate to Vigil's role in the conspiracy. Likewise, the second set of requested information -- Yeh's cellular telephone records -- could provide additional information about the role Ortega played in the conspiracy. The third set of requested information, which is similar to the second set, could also provide insight into Ortega's role in the oxycodone conspiracy. These requests are relevant to Vigil's role, or lack thereof, as an organizer, leader, manager, or supervisor under U.S.S.G. § 3B1.1(c).

Second, it appears that the evidence is not otherwise procurable reasonably in advance of

trial by exercise of due diligence.  Vigil represents that she has tried to contact Joe's Smoke Shop and Yeh about obtaining the records at issue, and has been unsuccessful.  See Motion at 5.  It does not appear that this evidence is in the custody of the United States, from whom Vigil could more easily obtain the evidence.  There is a significant likelihood that a court order will be necessary to obtain this evidence.

Third, Vigil appears not to be able to properly prepare for sentencing without such production and inspection in advance of her sentencing.  The failure to obtain such inspection may also tend unreasonably to delay her sentencing.  Vigil seeks the requested evidence to challenge the USPO's conclusion that she is an organizer, leader, manager, or supervisor under U.S.S.G. § 3B1.1(c).  The background comment to this guideline notes that enhancements under this guideline relate to "relative responsibility" among different members of a criminal enterprise.  See U.S.S.G. § 3B1.1 cmt. background.   Application note 4 to this guideline acknowledges that, "[i]n distinguishing a leadership and organizational role from one of mere management or supervision," a variety of factors may be relevant, including the following: (i) "the exercise of decision making authority"; (ii) "the nature of participation in the commission of the offense"; (iii) "the recruitment of accomplices"; (iv) "the claimed right to a larger share of the fruits of the crime"; (v) "the degree of participation in planning or organizing the offense"; (vi) "the nature and scope of the illegal activity"; and (vii) "the degree of control and authority exercised over others."  U.S.S.G. § 3B1.1 cmt. n.4.   These inquiries are factually intensive ones.   Vigil will likely need evidence to successfully contest the USPO's application of this enhancement.   Likewise, the nature of the evidence, some of which includes hours of video footage, is not the kind of evidence that counsel could quickly go through before sentencing.  It would likely take counsel several days or weeks to digest the evidence to properly present it to the Court in support of their arguments regarding the

-32-

enhancement under U.S.S.G. § 3B1.1.  Not allowing production of the evidence before sentencing would likely result in a situation where the Court would have to continue the sentencing hearing.

Fourth, Vigil appears to have made the application in good faith and does not seek a general fishing expedition.  The requested evidence is relatively narrow -- cellular telephone records for two individuals and a few hours of surveillance video footage.  Her requests are not overly broad such that the Court is concerned about placing undue burdens on the subpoenaed parties.  The requests are narrowly tailored to specific evidence, and the Court concludes they are calculated to obtain evidence to combat the application of an enhancement under U.S.S.G. § 3B1.1.  Thus, the Court believes that the requested subpoenas duces tecum properly seek production of the evidence before Vigil's sentencing.  Furthermore, all the evidence before the Court suggests that Vigil is indigent given that she has required representation under the Criminal Justice Act, 18 U.S.C. § 3006A, and has not obtained her attorney.  The Court will order free process to serve the subpoenas as a result of Vigil's indigency.

III.    **THE COURT WILL REQUIRE PRODUCTION AT A FORMAL PROCEEDING AT THE COURTHOUSE RATHER THAN AT THE OFFICE OF VIGIL'S COUNSEL**.

Rule 17(a) states that a subpoena "command[s] the witness to attend and testify at the time and place the subpoena specifies."  Fed. R. Crim. P. 17(a).  Rule 17(c)(1) provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1).  "Rule 17(a) permits the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and trials.  It may not be used to compel prospective trial witnesses to attend pre-trial interviews with government attorneys."  2 C. Wright & P. Henning,

-33-

supra § 272, at 244.   As the Tenth Circuit has stated: "Courts have consistently interpreted Fed.R.Crim.P. 17(a) to permit the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and trials."   United States v. Villa-Chaparro, 115 F.3d at 804.   "The general provisions of the other subdivisions of the rule," such as rule 17(a), "apply on such matters as form and issuance, defendants unable to pay, and service of the subpoena" for rule 17(c) subpoenas duces tecum.   2 C. Wright & P. Henning, supra § 275, at 257.   As the Tenth Circuit has discussed, a court can impose an appropriate remedy if either a defendant or the United States abuses the subpoena process.   See United States v. Villa-Chaparro, 115 F.3d at 805 ("Our refusal to disturb Defendant's conviction on this basis, however, should not be construed as approval of the government's practice.   If the government abuses the subpoena power in future cases, the district court certainly may fashion an appropriate remedy to stop the abuse.").

Vigil requests that production of evidence in relation to the subpoenas duces tecum occur at her "counsel's office no later than twenty days after the service of the requested subpoenas."   Motion at 8-9.   The Tenth Circuit has stated that such a practice is not permissible.   United States v. Villa-Chaparro, 115 F.3d at 804 ("Courts have consistently interpreted Fed.R.Crim.P. 17(a) to permit the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and trials.").   Vigil's requested course of action is such that the United States could potential request the Court to assess an appropriate penalty against her if the Court were to permit production in the manner she requests.   See United States v. Villa-Chaparro, 115 F.3d at 805 ("Our refusal to disturb Defendant's conviction on this basis, however, should not be construed as approval of the government's practice.   If the government abuses the subpoena power in future cases, the district court certainly may fashion an appropriate remedy to stop the abuse.").

Thus, the Court will deny her request for production at her counsel's office.   The Court will

require production of the requested evidence at the Court twenty days after the service of the requested subpoenas.  The Court may permit the parties and their attorneys to inspect all or part of the produced evidence.

**IT IS ORDERED** that Defendant Gloria Vigil's _Ex Parte_ Motion for 17(c) Subpoenas, filed February 10, 2012 (Doc. 119), is granted in part and denied in part.  The Court will require production of the requested evidence at the Court twenty days after the service of the requested subpoenas.  The Court may permit the parties and their attorneys to inspect all or part of the produced evidence.

_____
UNITED STATES DISTRICT COURT

_Counsel:_

Kenneth J.  Gonzales
  United States Attorney
John C. Anderson
  Assistant United States Attorney
Albuquerque, New Mexico

      _Attorneys for the Plaintiff_

Marc M. Lowry
Rothstein, Donatelli, Hughes, Dahlstrom & Schoenburg, LLP
Albuquerque, New Mexico

      _Attorneys for the Defendant_